We'll hear argument first this morning in Case No. 10-209, Lafler v. Cooper. Mr. Bursch. Thank you, Mr. Chief Justice, and may it please the Court. There are three points that I would like to press this morning regarding deficient plea advice. First, this Court has consistently limited the effective assistance right to ensuring the reliability of the proceedings where a defendant is adjudicated guilty and sentenced. Mere outcome is not the Strickland prejudice. Second, when asserting an ineffective assistance claim, the defendant is not liable. Could I stop you on the first? You say mere outcome is not enough, reliability of the proceedings. How does that fit with Kimmelman, where we said the right to effective assistance does attach to suppression hearings, obviously, where evidence would not make the proceedings more reliable? Justice Kagan, even in Kimmelman, the Court remanded back to the lower courts to determine whether there was prejudice. And the obvious implication was that if there was no prejudice on the fairness of the adjudicatory proceeding itself, there would be no Sixth Amendment violation. The second point that I wanted to press this morning was that when asserting an ineffective assistance claim, a defendant must show deprivation of a substantive or procedural right. And this Court has already held that a defendant has no right to a plea bargain. Third, every possible remedy for deficient plea advice creates intractable problems demonstrating the right to a plea bargain. Sotomayor, there is no right to demand one or to keep it, but isn't there a right to make that kind of critical decision? Justice Sotomayor, the not guilty plea is an assertion of the defendant's constitutional rights. It's invoking the right to trial that the Sixth Amendment contemplates. And so this situation is really more like Fretwell. It's not a decision that you have, for example, whether to have a jury or not to have a jury, or whether to have this attorney appointed for your counsel or not, because in each of those cases you have an underlying substantive or procedural constitutional right, and you have no right to a plea. And so this fork in the road is really an illusory one, because you have no right to choose the other side of the fork. Kennedy, Suppose this were a death case and roughly the same facts, failure, failure to communicate. And that leads me to one other question. Based on your opening remarks, we can think about adjudication as having a constitutional violation, injury, and remedy. Are you saying that there was a violation in the abstract here, but no injury? Or was there a violation and an injury, but just no remedy? So if you could do all of that, including the death penalty hypo. Yes. I'm saying that there's no violation, because in order to prove a Sixth Amendment violation, you have to demonstrate unreliability of the adjudicatory process. I'm also saying that there's no reasonable remedy, and I'll talk about that in a minute. With respect to the death penalty in particular, I would refer this Court right back to the Fretwell decision, because there, too, the Defendant and his counsel had an opportunity to raise a Collins objection that would have changed the sentence to avoid the death penalty in that case. Collins obviously was overruled before Habeas process, and this Court held that the Defendant could not use the vehicle of an ineffective assistance claim to regain that lost opportunity, because he had no constitutional right in it. And so really, the remedy — I'm sorry, the severity of the sentence doesn't enter into the analysis once you've established that there has been no violation. Ginsburg. When you say no violation, you don't mean that there was no ineffective assistance of counsel. I thought that was conceded, that there was ineffective assistance. That's correct, Justice Ginsburg. We have conceded for purposes of argument that there was ineffective assistance. But Strickland is a two-part test, and even after you get past the deficiency prong, there's still the question of whether this task summed out on the reliability of the proceedings. Well, I thought that the second part of the test asked about harm. And here the person is sitting in prison for three times as long as he would have been sitting in prison had he had effective assistance of counsel at the plea bargaining stage. So why doesn't that just meet the requirements of Strickland, both deficiency and prejudice? Well, that's actually the best argument that the Respondent has in this case. And the reason why it's wrong is because this Court has been very careful to define what that harm is, specifically the word was outcome in Cronic and Strickland. And outcome, there is a different outcome here. He's sitting in prison for three times as long. That's a different outcome. Yes, but the Court went on to define outcome to mean reliability of the adjudicatory process. In fact, specifically the language was whether absent the deficiency, the defendant – I'm sorry, absent the deficiency, the fact finder would have had a reasonable doubt respecting guilt. And what we have here is a situation where everyone acknowledges Well, take the sentencing cases. The sentencing cases, the determination of guilt is over. And the question is, is this person sitting in jail for one day longer because his counsel was ineffective? And if he is, we would find prejudice there. So why isn't the same thing true here? Well, I don't believe it's quite that simple. If there was some legal error, you know, an error to which he had a constitutional right, then certainly what you said is exactly true. But if you're talking about more or less days because of, for example, a judge thinking that the difference between crack and cocaine sentences was not appropriate or other things that are really up to the discretion of the trial court judge, Strickland says absolutely, those things are not Sixth Amendment violations. Well, I guess I don't understand that answer because that answer seems to suggest that the assistance being provided was not ineffective. But here, as Justice Ginsburg notes, you've conceded that the assistance is ineffective. That assistance has led to a much, much, much longer sentence, you know, as opposed to something the sentencing cases suggest that 24 hours is enough. This is 10 years or something. And, you know, that should be the end of the game, no? Well, let's try another sentencing hypothetical where it's clear that there was deficient performance. Say that there's a local trial court judge, and everyone knows that he has a certain predilection that if you like the local sports team, he's going to give you a break. If the attorney comes in and he does not press the argument that this convicted defendant likes the local sports team, he gets a higher sentence, that's still not a Sixth Amendment violation. Really, once you shift to sentencing, the question is were you legally entitled to the result. And simply because you failed to appeal to the right discretionary tendencies of the trial court doesn't really make a difference. Here we're talking, obviously, about the guilt phase. And it's much easier here because it says clearly in Strickland and Cronic and Kimmelman and many, many other cases that that outcome difference, the harm difference, has to be reliability of the process itself. It's a process. Scalia. You acknowledge, though, that it's ineffective assistance of counsel if you're – well, no, I guess you haven't acknowledged. Let me ask you. Have you provided ineffective assistance of counsel if you are a lousy bargainer? You're just no good at the, you know, at the, I don't know, the game of bargaining. And so you do a bad job in bargaining down the sentence. I mean, notoriously bad job. Is that ineffective assistance of counsel? Under the Court's first prong of Strickland, you would have to look at whatever the standards of professional practice were, and depending how lousy the bargainer was, it could or could not be deficient. But the important thing is, if it didn't have any effect on the subsequent trial and sentencing, then it would not be a Sixth Amendment violation. Well, I don't even agree with the first part. I don't think our legal process is a bargaining game. It wouldn't be. Well, we could agree with that. Bargaining is not what this is about, and that's why this Court has held in Weatherford and other cases that there is no right to the plea bargain itself. And that's really the second point. You can agree with that when 95 percent of the criminal cases are disposed of by way of bargaining? Because in the 95 percent of cases that are disposed of that way, this Court has already held in Padilla and Hill that there is a constitutional right to have effective counsel when you're accepting that plea. And the difference is, when you're accepting a plea, you're being convicted. That is the conviction. And this Court frequently establishes different tests when you're waiving a right, for example, the right to go to trial, versus invoking a right, going to trial. Sotomayor How can you talk about the reliability of a process or its fairness when you have an attorney who has fundamentally misgaged the law? How can a trial be fair when the attorney is going into a trial thinking his client can't be convicted because the shots fired hit below the waist? So how can that kind of trial ever be fair? Because there's no evidence here, not even a contention, that his belief had any impact whatsoever on the fairness of the trial proceeding. And this Court has drawn a bright-line rule at trial. You know, if you look at the preliminary hearing, if there's attorney error there, deficiency. Kennedy Well, but you skipped over a step. I think we do assume that the deficient advice led to the determination to plead not guilty. Sotomayor Right. Again, but that fork in the road is not one to which he has a specific reason for writing. Kennedy Well, but that's the question we're confronting. So I think your answer was a little too facile on that point. We have to assume there's ineffective assistance of counsel in advising the client the nature of the charge for the client, so that the client can make up his mind whether to plead guilty or not guilty. We have to assume that in this case, correct? Sotomayor Correct. We are assuming that. But what I would submit, respectfully, is that the plea stage isn't any different than a preliminary hearing or a lineup or a suppression hearing, where if there was some deficient attorney conduct, this Court would still then look to see whether it had an adverse impact on the adjudication of guilt. Ginsburg Suppose the defective advice causes the defendant to enter a plea that he would not have entered if he had been properly advised. Can he get relief? Sotomayor Absolutely. Under Hill and Padilla, this Court has said when you give up your right to trial, that's a very different situation, and that there is a remedy for that. Ginsburg So it explains why defective advice causing a plea, that qualifies. But defective advice causing the defendant to turn down a plea is not. Sotomayor It's just like the difference between deciding to proceed with counsel, in which case there is no barrier to entry, or deciding to proceed without counsel, giving up your constitutional right. Scalia No, that's not the difference at all. It seems to me the difference is when you plead guilty, you deprive yourself of the 24-carat test of fairness, which is trial by jury before nine people who have to find you guilty beyond a reasonable doubt. When you plead guilty, you give up that. When you don't plead guilty, you get what is the best thing in our legal system. You can't do any better than that. Justice Scalia, you said it much more artfully, but that's exactly the point I was trying to make with Justice Ginsburg, that when you invoke your constitutional right, your right to have an attorney, to go to a trial, to have a jury, we don't set up barriers to entry. It's only when you give up those rights. Kagan I take it then, Mr. Bursch, you would have the same answer if the State had never provided counsel at all. So long as, if the plea negotiations were all done between the prosecutor and the individual defendant, and the State refused to provide the individual defendant with counsel, but so long as the person in the end decided, oh, I don't like this plea, I'll go to trial, then it's all fine and dandy under the Sixth Amendment. Bursch That would be our position, because that's consistent with this Court's holding in Coleman and Wade and Kimmelman. Kennedy And that would also be your position in the Capital case. Bursch Yes, under Fretwell, this Court held definitively that so long as the reliability of the adjudicatory process and sentence were intact, that the deficient advice didn't affect it, that the severity of the punishment was not legally relevant. Scalia So your position is you're entitled to effective assistance of counsel before you plea guilty, but you're not entitled to effective assistance of counsel in evaluating plea offers? Bursch I would say it's slightly different, that you're entitled to effective counsel at every critical stage. However, it is not a Sixth Amendment violation unless it casts doubt on the reliability of the adjudication of the appeal. Kennedy All of this is the violation in the abstract kind of damnum asque inuria? Bursch I'm sorry. Kennedy Damage without injury? Bursch No, because under the Strickland and Cronic cases, there is no damage. There's no Sixth Amendment violation unless you can prove the prejudice. Alito All of this is theoretically interesting, and it may be the capital cases are sui generis here, but I thought the heart of your argument was that there just is no way to unscramble the eggs in this situation. There is no, and that was your third point, I understood it, there is no remedy that can put the parties back into the position where they would have been had the error regarding the legal issue not occurred. Bursch That's exactly right. And let's talk about the two remedies that are most frequently bandied about in the circuit courts. The first is to order a new trial. And to us, it makes no sense to order a second trial after you've already had a first error-free trial. In addition, you think about these habeas cases. If you're issuing a habeas writ and vacating a sentence 8 or 9 years after the fact, like you are here, essentially you're releasing the defendant because witnesses will die, they'll move away, memories will be sparse, and so that's the natural effect of that. And in Cooper's brief, he doesn't even advocate for a second trial. He asks for a specific performance. The problem with that is there you're infringing on the prosecutor's discretion, which is sacred, to say what his plea offer is going to be. And circumstances have changed once a trial has taken place. Roberts Well, sacred is a little strong, don't you think? I mean, it is a, to some extent, unfair to the prosecutor because he knows already he's got a guilty verdict in his pocket and he has to go back. But why is it so terribly difficult to tell the defendant he has a right to accept that offer if he wants, but then go through the normal process, which is it has to be approved by a judge and all that stuff? I don't see what's terribly difficult about that. Well, we contend it violates the separation of powers, but you bring up an important point, because circumstances have changed in two respects. The first is that you learn more information. So here, for example, the prosecutor learned that not only did Mr. Cooper shoot Calimundi, but he did it while she was screaming and running away from him. That's a changed circumstance. He might not give the same plea. Even more so in Frye, where they learned that he was picked up for another criminal violation after the plea was given, and the prosecutor testified that he would have taken the plea back when he knew that. But the bigger changed circumstance is the trial itself, because the prosecutor has now gone through the risk of having an acquittal. He's also put, for example, the 8-year-old sexual abuse defendant on the stand, something he tried to avoid with the plea offer. And it truly is an egg that cannot be unscrambled. And unless there are further questions, I will reserve the balance of my time. Roberts. Thank you, counsel. Mr. Jay. Mr. Chief Justice, and may it please the Court. Petitioner's convictions and sentence are reliable because the proceedings that produced them were reliable. And to collaterally attack his convictions or his sentence based on allegedly ineffective assistance of counsel, he has to show that the ineffective assistance of counsel prejudiced him. As this Court's Strickland cases have used that term, that means he has to show that a reviewing court should lack confidence in the proceeding that produced the convictions or the sentence. Well, first, there's nothing about this in the Sixth Amendment, is there? I mean, the text of the Sixth Amendment talks about criminal prosecutions requiring the assistance of counsel for defense, period. The Sixth Amendment requires the assistance of counsel for defense. There's nothing in the Sixth Amendment that has these qualifications. I haven't seen anything in any case which was other than case-specific. That is, this issue hasn't been decided before, to my knowledge, though language can be taken out of those cases, as you've very properly done. And so there's nothing that I can find in the cases, nothing in the Sixth Amendment itself. In 95 percent of the cases, they do plead guilty. And what's the problem about ordering the prosecution to simply repeat the offer he gave before? Well, I mean, I don't really see if there — and prejudice? Well, the person's been executed. If he had gotten the plea offer, he would have pled guilty for 50 years in jail. Okay? That's my imaginary case. I can think of one where there's prejudice. He's dead. All right? So what's the answer in my imaginary case if it's not in the amendment, not in a holding, et cetera? Well, I think that — let me address the capital hypothetical that's come up several times. And I think that it's instructive, Justice Breyer, to look at this Court's Strickland cases and look at what remedy they order when there has been ineffective assistance that shakes the reviewing court's confidence in the proceeding that produced it. They order a new proceeding. They don't order a specific sentence. That's why the outcome has never been the yardstick by which ineffective assistance was used. I don't want to — I want to stop you there because I don't understand it. But the suggestion is, I'm not taking this case. I'm making up a hypothetical since we're discussing it really based on the next case. The defendant never heard the offer, never heard it. It is crystal clear that if he'd heard it, he would have accepted it. Okay? I'm trying to separate out difficulties of this case, which strikes me as difficult because of the facts, from the principle. And what I want you to do is to tell me why I shouldn't accept the principle, and then we can worry about what's a clear case. But I think the principle, Justice Breyer, is that you look at what the — that you look at what it is the Court's being asked to set aside. Death. Let's say death. Right. So in this case, you look at the death sentence. How was that death sentence produced? If the defendant can show, for example, that he got bad advice about the plea. It shows that never did he ever become aware, because his lawyer was sleeping and moved on vacation and never told him about the plea offer. That's my hypothesis. I think that's actually an easier hypothetical than the bad advice, because you can show that if the lawyer then stands up and does a bang-up job at trial, right, the defendant is convicted of capital murder, and the defendant can't show any prejudicial effect on the trial, that means that no other lawyer doing a better job could have gotten the defendant — could even show a reasonable probability that a different verdict would ensue. Alito, at this point, it has a reliable capital verdict. Alito, the Court has said that death is different, and do you think it's inconceivable that there could be a different rule for capital cases, such as a rule requiring that in a capital case any offer of a noncapital sentence as part of a plea bargain actually be waived by the defendant in court so that this doesn't come up? This is not a capital case. This is not a capital case, and I think that it's certainly not a capital case. Breyer, if you don't want to do the capital case, I'm still going to give you the principle. I'm happy to do the capital case, Justice Breyer. I'll change my hypothetical and say all that happened was that this perfect trial, because of mandatory sentencing rules, led him to prison for 50 years as compared with a plea bargain, which would have given him 2 years. Now, he is in prison for 48 years more, and I consider that that's at least harmful to him. So where the amendment doesn't speak of it, where the misbehavior of the lawyer is crystal clear, where it's 48 years more in prison, what is it that bars what seems to me obvious, that an inadequate assistance of counsel remedial through a specific decree saying reinstitute the offer, led to enormous unfairness and prejudice? Two points, Justice Breyer, and I want to make sure that I get out my answer to your capital hypothetical, because you don't look just at whether the sentence that resulted was worse than the sentence that could have resulted. If that were the case, Fretwell would have come out the other way. That's death with no objection made, life sentenced if the objection had been made. So it's not an outcome, it's not a narrow comparison of outcomes. What you look at is how the sentence was produced. Is this defendant entitled, had this to a lesser sentence? Is this — had this defendant had a better lawyer at sentencing? Is there even a reasonable probability that that lawyer, through a different strategy, for identifying a legal error? Scalia, you disagree with the assertion that Justice Breyer made that this was unfair. This man deserved to get the sentence he got, didn't he? He had a full and fair trial, a jury of 12 people finding him guilty beyond a reasonable doubt, determined that he deserved that sentence. How could it be unfair to give him the sentence that he deserved? Yes, that's correct. In every case. But listen, where people don't get the sentence that they deserve because, for example, the lawyer was inadequate, I mean— And in those cases, Justice Breyer, you show that the lawyer had a bad strategy at sentencing. That might well have been the same bad strategy that led the lawyer to recommend a not-guilty plea. Let's go to trial on my crazy strategy. If he can show that, and he can show that a better lawyer with a better strategy would produce a different result than the Sixth Amendment entitles that person to a new proceeding. The Sixth Amendment never entitles the person to have a court order a particular sentence. And you can't use the prosecutor's offer, made at a different time, as the benchmark and say, well, the prosecutor was okay with it at this other time, therefore, the prosecution must be forced to live with it now. And that's because a plea offer rests on a number of considerations, the need to obtain the defendant's cooperation in other cases, the desire to spare the witnesses and the victim the burdens of trial, and, frankly, to avoid the risk of an acquittal. And the prosecution in this case, and in cases like this one, where there's been a reliable conviction and a reliable sentencing, prosecution has already incurred all of those burdens. So to look at the 51-month minimum offer that was made 8 years ago and have that be the benchmark simply is not something that this Court has ever done in its Strickland cases. And I think that it's revealing about the Respondent's case. Kagan.              Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan.               Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. There are two things that the Court can be talking about. There's the inter – the interaction between the State and the defendant, and that's where the Court has customarily used language like, critical stage, a confrontation between the defendant and the prosecution. That's not what we have here. This is about private advice between the lawyer and the client. And we're not contesting the State's right to have that address to the effector.     Kagan. Kagan. Kagan. Kagan. Kagan. is inconsistent with the Sixth Amendment. That's what we've said. Isn't that right? Well, I don't think the Court has faced – faced this particular situation, Justice Kagan. So it's not a critical phase. It's only a critical phase depending on the outcome of what happens at that phase? We are – we are assuming that Mr. Cooper, in this case, had a right to receive effective advice about whether to enter this plea. But we're – our position is that he wasn't prejudiced, because – Has – have you ever seen a critical phase before in our Sixth Amendment jurisprudence where the right to a lawyer depends upon what has – what happens during that critical phase, where if one outcome results, there's no Sixth Amendment right, but if another outcome results, there is? Well, again, we don't think that this is in any way crucial to deciding this case. But Scott v. Illinois, Justice Kagan, is an example of that. Mr. Jay, couldn't – couldn't it be said that what our cases hold is that pleading guilty is a critical phase? Would that be enough to explain our cases? It certainly is correct that pleading – that a guilty plea hearing where – where the defendant doesn't have a right to a plea hearing. Well, it's correct, but is it enough? Do you want us to write an opinion that plea negotiations are not a critical stage of the criminal process unless at the end of the day a guilty plea results? That's not at all what we're asking, Justice Kennedy. Okay. But we're asking. Justice Kagan and I want to know what your test is. Our test to resolve this case is to look at what it is that the habeas Petitioner is challenging. He's challenging conviction in the sentence. And the conviction, he was found guilty by a jury. He now says, page 14a of the red brief, that he is guilty and he wishes he had pleaded guilty sooner. No basis for challenging the conviction. May I finish the thought on the sentence? Sure. And on the sentence, he was sentenced in accordance with law. He had effective representation at sentencing and he got the sentence that corresponds to the counts of conviction. What he wants is to reinstate a deal that was in the prosecution's discretion to offer once upon a time. Thank you, counsel. Thank you, Mr. Chief Justice. Ms. Newman. Thank you, Mr. Chief Justice, and may it please the Court. It is uncontroverted here that Anthony Cooper received incompetent advice from his counsel. It is uncontroverted here that as a result of that incompetent advice, Mr. Cooper  I think that's not that he got ineffective assistance. Yes, that's not controverted. But that he would have gotten the 51 months to 68 is certainly controverted because of two interventions. The prosecutor can say, no deal, I'm withdrawing it, even after an initial acceptance. And the judge can say, I think 51 to 68 is entirely improper for what this man did. Those are both true, Justice Ginsburg. However, the Strickland test requires a reasonable probability of a different result. And on this record, we have no reasonable probability, we have no reason to expect that that's not exactly what would have happened. The relief that you want is specific performance on the plea bargain. Correct. Isn't that correct? What if it had come to light or come to the prosecutor's attention during this intervening time that your client had committed four or five other shootings? Would you still be entitled to specific performance? Yes. We evaluate the case, and the Strickland analysis is an imperfect – the Strickland remedy is an imperfect remedy. It's always been an imperfect remedy. It will always be an imperfect remedy. What is the judge supposed to do? Let's say the remedy is it goes back before the judge. We're trying to unwind the clock or whatever the metaphor is. Does the judge have to presend all knowledge of what he learned in the trial? Well, this Court has stated numerous times that it presumes a conscientious decisionmaker. And a conscientious decisionmaker would put – Well, I'm asking what – I'm a conscientious decisionmaker, and I'm asking for your advice on what I should do. I know the details of this crime, which were more horrific than I would have expected, because I've heard them at the trial. Do I just somehow forget about that, presume that? You would evaluate the case as you would have evaluated it at the time. So the answer is yes. I ignore everything that I learned during the trial. Yes, because the deficient – you evaluate things at the point of the deficient performance. And at the point of the deficient performance, the judge had a certain amount of information before him, the prosecutor had a certain amount of information before him, and the defense attorney had a certain amount of information before him. And that's pretty incredible. It doesn't matter what the defendant has done in the – has been discovered to have done in the interim. Committed five murders, ten murders. In that case, if – Wipe it out of your mind, you get the plea bargain that was offered at an early point in the investigation of the case. Yes, because what happens in ineffective assistance of counsel claims is the State has to bear the burden of the unconstitutionality. And so that is a price that this Court has said the State will bear when there is an un – when there is a constitutional violation, because there is no precedent. The judge is – he knows what the plea – let's say he knows what the plea bargain was, but he also knows that for one of the crimes, felon in possession, that alone the sentencing range is 81 to 135. So without any – considering anything that happened at trial, the judge knows that the plea bargain was for less than if the man had been charged with – only with a felon in possession. Yes. That's accurate. So it seems most unlikely that a judge would have accepted the plea bargain for 51 to 68 for the crimes that were charged. No. I would disagree with that. This – in this Court, and I can represent to the Court in my practice before this Court, which I've practiced before this Court for many, many years, this plea bargain was an ordinary plea bargain. This was not anything extraordinary. It was very run-of-the-mill. It was – it was a run-of-the-mill case. That may be, but is it not true that the sentence range was 81 to 135 for a felon in possession? I did not – typically, you only score out the guidelines for the most serious offense. So the guidelines may have been high for the felon in possession offense, but, however, the judge in – in fashioning the remedy, you're not going to – this Court would not take discretion away from the judge. So in fashioning the remedy, in adopting the remedy of the Sixth Circuit, if this Court were to do that, this case would go back before this same judge if he's still on the bench. And it would be – we'd put people back. Mr. Cooper would accept the plea. The judge retained sentencing discretion. Breyer, it wouldn't be a problem. The problem with Justice Alito's hypothetical, I take it, is what the order would say is that the prosecution asked you for a reasonable time, extend the same offer. And then if it's accepted, you go to the judge. The judge doesn't have to accept the plea. Right. You can't find you can't make him do that. But I have a bigger problem with this case, which is – which I may be the only one to have. But as I've looked at it, I don't see ineffective assistance of counsel within the AEDPA meaning. That is, you have two courts in the State which have said this is not ineffective, and as I look at it, it's somewhat ambiguous at best. And we have the Sixth Circuit saying it is. Well, I know both sides agree, but, I mean, both sides couldn't make us decide a case by saying there's a murder when, in fact, it's not. I mean, so what am I supposed to do about that? I find this a tough case. I've read the record. And in my own opinion at this moment, perhaps no one else's, there is no ineffective assistance of counsel such that the Sixth Circuit could set that aside, a contrary finding of the State court. What do I do? Sotomayor, if Justice Breyer permits me to add an addendum to give the reasons why I might agree with him, or a way of viewing this, as I read the lower court's decisions, they said there wasn't ineffectiveness because he was just trying to get a better deal. And I think that translating what he said, a very reasonable view by the Court was the prosecutor may think of a lesser charge, because if this guy really wanted to kill this woman, he would have hit her head or her chest. But he aimed low, so he was really just angry and shooting, enough so that if he hit her, okay, she died, okay, but he really didn't have that heinous intent to execute, you know, a gunshot to the brain. And so he was hoping to negotiate something better. If that's, Justice Breyer's shaking his head, if that, in fact, if this is an EDPA case and we have to give deference to the State courts, doesn't that resolve this case? We have to give deference to their finding. You do have to give deference to their finding. There's no question under EDPA there's deference and there's actually no question. There's sort of a doubly deferential review given the Strickland analysis. However, the State courts did not decide this case on Sixth Amendment grounds, so there is nothing to give deference to. The State courts decided this and the trial court said Mr. Cooper made his own choices. That's not an ineffective assistance at counsel analysis. The Court of Appeals of Michigan also did not engage in a Sixth Amendment analysis. They adopted the trial court and said that Mr. Cooper made his own choices. So there is the — and this claim was raised specifically on Sixth Amendment grounds from the very beginning of the appeal until it's reached this Court. So there is no EDPA deference to give to the State courts' decisions. There is no question as well that it was ineffective assistance, because the State court record does not bear out that Mr. McLean was trying to get a better deal. Roberts You said earlier that the district court, the trial court judge, still retains discretion as to whether or not to approve the plea bargain, right? Whether to accept it. The sentence. Yes. Well, which is it, the bargain or the sentence? It includes the sentence, correct? It's a sentence recommendation and under Michigan law that judge could not. He has discretion. So is he allowed to take into consideration all that's happened before, not just with respect to guilt or innocence or the result of the trial, but in imposing the sentence or approving it? Well, he can take into account anything that he could have taken into account in the first place. But in this case he learned at trial, I take it. I would argue no. I mean, certainly this Court would set the parameters. What if he turns it down, Ms. Newman? He says, no, I can't accept this. What happens then? I would say that's not an option. Oh, I'm sorry. For the judge or Mr. McLean? Yeah, the judge. It goes back to the judge. We agree with you and we send it back to the judge. We reinstate the offer, okay? He accepts the offer. It goes to the judge and the judge says, no, this is outrageous. I'm not going to approve this plea bargain. What happens then? Well, in that case, the case would proceed under Michigan law, and in that case the judge would say no. We would have a new trial, is that it? No, I don't think it would be perfectly acceptable to say new trial is not an appropriate remedy in this case, because he had a trial. Okay. So if the judge turns it down, then the prior trial is valid, is that right? It would depend on the reasons why the judge would turn it down. He turned it down. It would have to be a legitimate reason under State law, otherwise they would. Then the prior trial is okay. It's not that it's okay, but I think under imperfect circumstances, it's the result that would. Why, why, why wouldn't the remedy be, from judging what you said before, is an order saying to the prosecution, reinstitute the plea bargaining, give him whatever the week or whatever it is. Now, we imagine the defendant says, I accept. So then they go to the judge, just as they would have before. Right. And the judge has the freedom to accept that or to reject it. Correct. If he rejects it, there is no plea agreement. Now, the defendant must plead. He can plead guilty or not guilty. And whatever flows from that flows from it. That's a perfect also a perfectly acceptable remedy. I think that the purpose, the reason. Wait. Both can't be perfect. Either he has another trial, although he's just been found guilty, by a jury of 12 with an entirely fair proceeding, or else he doesn't have a new trial. He does, he does. His suggestion is perfect, but mine is more perfect. You can do it, you don't have to, you would, he's right, you would have to, under my suggestion, have a new trial, even though there was a trial that took place 2 years ago, whatever it is.  Correct. But that isn't the end of the earth. So if you are the defense counsel, the best thing for you to do is not communicate any plea offer you get. And then if your client is found guilty, then you can go back and say, oh, by the way, I didn't tell you about this, and he gets a whole new trial. No. The bar on habeas, well, the bar on Strickland, even not on habeas, is a very high bar, as this Court said in Padilla. And it's not a bar that can be often be mapped. And so you have to show under a Strickland analysis deficient performance and prejudice. Well, I don't know that that's going to be so hard to show. Do you think it's feasible to draw a distinction between this case where there was arguably inaccurate legal advice and the case in which the defense attorney simply makes a terribly mistaken calculation about the chances of a favorable verdict at trial? A favorable plea bargain is offered, caps the guy's possible sentence at, let's go to trial, I'm going to rip the prosecution's witnesses apart, the trial turns out to be a disaster, convicted on all counts, 25 years. You think that it's impossible for the rule that you want us to adopt here to be applied in that situation as well? I think it would be much more difficult, because this Court on habeas review and State courts on non-habeas review are very deferential. And so I think it's possible to draw a distinction between this case where the defense attorney simply makes a terribly mistaken calculation about the chances of a favorable verdict at trial. And so you think it's impossible for the rule that you want us to adopt here to be applied in that situation as well? I think it would be much more difficult, because this Court on habeas review and State courts on non-habeas review are very deferential.    here to be applied in that situation as well. Kennedy, your letter says withdrawn. We're going to have inquiries post-Hoke on all of these negotiations and discussions, and it seems to me that absent some other rule, which I don't think we have the authority to impose, that all plea officers must be in writing and be stated with specificity, that what you're proposing is simply unworkable. I disagree, Your Honor. We've had Strickland and Hill jurisprudence for three decades. There was the Floodgates argument when Hill was decided that we're going to have all these people that the — and we've had since McMahon v. Richardson this Court saying plea bargaining is a critical stage and— Sotomayor, the Federal circuits follow your rule, isn't that right? Right. We already have unanimity— The Floodgates is not opened. I'm sorry. Go ahead. Yes. We have unanimity in the Federal circuits, and we have almost every State that has addressed this issue has addressed it in the same manner. What is the unanimity on the remedy? Here the Court said that the writ shall be granted, conditioned on the State taking action to offer the 51 to 85-month plea. So that doesn't bind the judge, but it does bind the prosecutor. Correct. And it removes the possibility of the prosecutor saying, I would have withdrawn that initial offer. Correct. So the prosecutor — the remedy, is that the remedy that's uniform, that the prosecutor has no discretion, only the judge does? Well, the remedies vary. When I said unanimity, I didn't mean every court and every circuit does exactly — handles this exactly the same way. Unanimity in the sense that every Federal circuit and almost every State that has addressed this issue, and they've addressed this issue for over 30 years, has found that there is a cognizable Sixth Amendment violation that can be remedied on appeal. And perhaps the lack of unanimity on the remedy question is appropriate. I mean, people have been trying to suggest different remedies. But perhaps one way to deal with the remedy question is to recognize that these cases present very different factual circumstances, that there are a lot of variation in them, and to give a substantial amount of discretion to the lower courts to work out what the best remedy is consistent with that factual variation. Absolutely. And it's the same thing the courts have been doing, again, since Strickland and Hellward started. Scalia. What factual variation do you think justifies a categorically different remedy? I mean, it seems to me some of the remedies are good and some are bad. Correct. What factual — I mean, give me an example of the different remedies and how a certain fact situation could make one okay and the other not okay. Well, even in the two cases before the Court today. I mean, in Mr. Frye's case, he accepted a plea and the State court ordered a new trial as the remedy for the ineffective assistance of counsel violation. In my case, in Mr. Cooper's case, it was objective. And why was that okay there? Why was that okay there? What factual circumstances made that okay there? Well, that's just — I don't know that the factual circumstances make it okay, but it was the remedy that the State — I'm not sure I understand your question. It was the remedy that the State ordered, and in this case, it's just the remedy that was ordered by the Federal court was the remedy that you ordered. In the situation where the defendant turns down, where a plea is turned down and the defendant goes to trial, are there any facts in which — any facts that would make any remedy other than specific performance the correct remedy in that situation? These cases are so fact-specific, Your Honor. I don't want to evade the question about a hypothetical, but every case is so fact-specific that I think there's — the possibility exists that a — that time is worth it. Alito, your argument is specific performance is the remedy for your case. And I agree with you that is, if there is to be a remedy, it's the only remedy that makes any modicum of sense. The remedy of giving a new trial, when the person's already had a fair trial, makes zero sense. That's correct. So what I'm looking for is any situation in which — so you said leave it to the discretion of the trial judge. But what is the — what discretion is there? What remedy in that situation, other than specific performance, would be an appropriate — would remedy what you claim to have been the violation? Well, in Mr. Cooper's case, I think the remedy of the Sixth Circuit is the only appropriate remedy that puts every — that is narrowly tailored to the Sixth Amendment violation, and that's what this Court has said. I mean, this Court has given direction to the courts, the lower courts, that you just narrowly tailor the remedy to fit the situation because there's so many factual  And I think that's what this Court has said. Breyer, what's wrong with that? Let me go back, because I'm now becoming convinced with — I'm trying out what Justice Scalia suggested. Maybe that does work better. What you'd say is, first, throw the defendant out unless you're convinced that not only is there ineffective assistance, but also it would have made a difference, he would have accepted the plea bargain. Correct. So now they have to hold the plea bargain open. They then do it. They then go to the judge, like any plea bargain. Ninety percent of the time, the judge will say fine, and that's the end of it. Correct. But should the judge decide that this is a case where he would reject a plea bargain for any one of a variety of reasons, then our assumption was wrong and we reinstate the previous trial. Now, they just say it's over, you were tried, you were convicted, that's the end of it. Now, what's wrong with that as a remedy? I mean, what's — why is that — why does that muck up the criminal justice system in some way? That's, I think, pretty much what Justice Scalia suggested, and I'm now trying that out, because the more I think about it, the more I think maybe that's okay. I believe it is what he suggested, and I had answered both of them. Don't blame it on me. I don't — I don't — it's your suggestion that we set aside a perfectly fair conviction. This is just a hypothetical. If you're going to set it aside, I think you should put it back in. Right. Well, again, right. It's going to depend on what happens below on that. We don't — I mean, the concept here is you want to — You're begging the question. Okay. Okay. Because I think, yes, Justice Breyer's first statement, you have to prove the guy who was going to take the plea, because there's no sense in giving him a remedy that he would have never sought. Right. Absolutely. All right. But it goes back to — I think it was Justice Alito or Chief — or the Chief Justice's question of on what basis can the judge reject the plea. You have said earlier that he has to put aside any information he learned during the trial, and that's really the nub of this case. What are the grounds that you're proposing the judge can use to reject the plea? Any grounds that would have existed in the original circumstances. So if the judge — in Michigan, there's a variety of reasons why a judge can say, I'm not going to accept this sentencing recommendation. So how are you ever going to know that the defendant would have accepted the plea agreement? Because by not accepting it, he's got a chance of going scot-free. He's going to have a fair trial, that's the assumption, and he may be acquitted. So how is a judge supposed to say — I mean, presumably the defendant will always say, I would have taken that deal because it's better. Well, how is a judge supposed to go back and decide whether that's true or not? Well, always it's — in large part, it's not going to depend on the defendant. It's going to — in larger part, it's going to depend on defense counsel. Why? Making that determination. Because Strickland always looks at strategy. I mean, that's the underlying argument of Strickland. Kennedy, I think you can answer the Chief Justice's question. The Chief Justice says, how are you going to know? You have to show prejudice. Correct. There's no prejudice unless he would have accepted the deal. How are you going to know that he would have? Of course, he's always going to say that he would have. But how is the trial judge going to make a credibility determination on that issue? I guess it's just a credibility determination. I don't know how he's going to do it. I think you can answer the Chief Justice's question, yes or no. I don't think I can answer it, yes or no. How's the judge ever going to know, be able to decide whether the defendant would have accepted the deal or not? The same way that the trial courts decide any question of fact. In this case, we had testimony from the trial attorney. The trial attorney taught the judge. I taught him not to accept the plea because he legally could not be convicted of the charge. I mean, Mr. Cooper was — It's the defendant's choice. It's not the lawyer's choice. It's the defendant's choice. But he has a right to the assistance, to the effective assistance of counsel in making that critical choice, and he didn't have the effective assistance of counsel. He wrote — Mr. Cooper wrote letters to the judge. That's the ineffectiveness question. I understand that to be taken out of the case by the concessions on the other side. I'm talking about the prejudice question. Correct. How is a judge supposed to know? The judge looks at the record before him. So in this case, we had Mr. Cooper's testimony. People have different — some people are willing to take the chance. Okay? Let's assume there's a 20 percent chance the person will be found guilty. Some people will say, I'm willing to take that chance because I just don't want the chance of going to jail. I'm willing to roll the dice. Other people will say, no, that's too much. Whether you want to go to jail may cut one way or the other. But how is a judge supposed to decide? Ask him, are you — do you take chances? No. By looking at — Mr. Chief Justice, by looking at the evidence and the record  In this case, Mr. Cooper wrote— So the judge should decide whether he would take the deal. No. Look at the evidence before him and say, boy, I'd take that deal. No, no, no, no. Mr. Cooper wrote two letters to the judge saying, I want to accept the plea. Mr. McClain, the trial attorney who provided the incompetent advice, told the judge in a post-conviction hearing that Mr. Cooper wanted to take a plea. I mean, there is no — it is beyond question in this case. Do you think the length and the complexity of the trial has any bearing on this? Now, this was a relatively short and simple trial, but let's say a prosecutor offers a plea deal in a case in which the trial is going to take six months and it's going to cost a million dollars, and if they try that case, there are going to be other people who will try. The plea is rejected, the case is tried, and then afterwards, the remedy is to reinstate this plea offer, which was predicated on the relieving the prosecutor of the burden of having to try that case. Well, every plea bargain is predicated on relieving the prosecution of having the burden of trying a case. I mean, the key here is, let's get back to what Strickland stands for, and it's the unreliability or the unfairness of the proceedings. It's not just an unreliability determination. So in this case, Mr. Cooper had two choices. He could take a certain plea with almost a certain sentence, or he could have a really what was a charade of a trial, because his attorney told him, you can't be convicted of this offense. You will not be convicted of this offense. You'll be convicted of molesting. You conceded he had a fair trial. That's not in the case. I didn't It can't be a charade and still be fair. It's an unfairness of the entire proceedings that were presented, all right? So there's no separate habeas claim with respect to the trial, but the reality is when you look at the criminal person, when you look at the Sixth Amendment, it talks about the criminal proceedings. You're saying it was unfair to have a fair trial? I'm saying it was unfair to go to trial when your attorney tells you you can't be convicted. You're saying it's unfair to have a fair trial, isn't that correct? That has to be your position. I'm saying it's unfair to say that the trial erases the unfairness when there was no possibility but for a conviction at the end of the road. So this was a certain guilty plea or this was a long guilty plea under the mask of the trial. But you can never say that there's no possibility of acquittal. Juries can decide not to convict no matter what the evidence. There's no defense. I mean, there was no possibility. Roberts. Roberts. It's up to the jury. It's not up to us and the ex-ante to decide this guy is definitely going to lose, so let's not waste our time. Juries, I don't want to say often, but it's not – it's certainly not inconceivable that a jury may decide for whatever reason we are not going to convict this guy. Right? That's true, but in this case, Mr. McClain told Mr. Cooper he would be convicted. I mean, he assured him of conviction. He said you will be convicted at the end of the trial. You're just going to be convicted of a lesser offense. Your guidelines will be— Sotomayor, what was the defense at trial? I'm sorry? What was the defense at trial? There was no defense presented. There was no real defense presented at the trial, because— Did he deny having committed the act of the shooting? Never. At trial? No. Is it the case that in most of the cases in which motions of this kind are brought to trial judges if there's a defense of mistaken identity or of I didn't do it, that judges often find the defendant has not proven that they would have taken the plea? In most cases in which a trial is had, where the defendant is pleading misidentification or I just didn't do this act, in those cases, do most of the trial judges not permit or don't find that the defendant has met their burden of proving that he or she would have taken the plea? I don't know that the cases bear out that if you have a valid defense it would be harder. But I would agree with that, if that's a hypothetical, that if you have a valid defense, it would be a lot harder to be in this position of showing that you would have taken the plea. I thought in this case, and you can correct me if I'm wrong, that your client told the attorney from the beginning, I did it, I won a plea. That's correct. There was never, there was no question in this case at any step, at any stage of the proceedings, and there was never, never anything from the trial attorney other than incompetent advice. He never went to trial for an acquittal. He went to trial because he believed legally his client would be convicted of a lesser offense that would put him in a better position than if he had accepted the plea. That was the only reason. Roberts. I just want to make sure I understand your point. You said there was no defense. Does that mean you didn't, he had a frivolous defense or that he literally didn't put on a defense, just said, look, the State has to prove the case and they haven't done it? Well, he held the State to its burden. That is a defense. I mean, I'm not saying literally no defense. And I apologize if that's the way it came across, but no cognizable defense. It wasn't mistaken identification or we didn't intend to hit her. I mean, it never contested the basic facts of the case. It's something the jury could have accepted, right? Even if it's not legally true that if you shoot him at the person below the waist, that's not a defense. But I could see a reasonable juror saying, he probably didn't intend to kill her. Look, he shot her, you know, below the waist. Maybe that is not such a bad strategy. Except that defense counsel on this record specifically said that he, that he was not running a strategy and hoping for that, that he told the client legally that's the only thing that could happen to him, so he was in a better position by going to trial. Thank you, Your Honor. Roberts. Roberts. Thank you, counsel. Mr. Bursch, four minutes. Thank you. I'd like to start at the one point where I think all of us, including counsel on both sides, agree, and that's that a second trial after an error-free first trial doesn't make sense. And that right there says a lot about Mr. Cooper's case, because a Strickland remedy is typically a new trial. And it's exceedingly strange that they're now saying that I don't want a new trial. That demonstrates that what they're claiming is not a Strickland violation. I would like to address, Justice Breyer, your suggestion that maybe you could have specific performance of the plea, and if it's rejected, then the trial result could simply be reimposed. And the question is, well, what's the problem with that? And I can tick off at least five. First, as Justice Ginsburg pointed out, it takes away the prosecutor's ability to withdraw the plea, which he or she undeniably would have had the right. Second, as Justice Alito said, it ignores that there's information that could be learned into the interim. Mr. Cooper shot three or four other people. Third, it ignores the fact that an error-free trial has taken place. The prosecutor has taken the risk of putting that 8-year-old sexual abuse victim on the stand, and you cannot take that risk away. Fourth, as I already mentioned, we've got the separation of powers issue and prosecutorial discretion. Fifth, we're going to have intractable problems. Say the offer was, plead to A, we'll dismiss B. He rejects it based on deficient advice. You go to trial. He's convicted on A and acquitted on B, and now we're going to try to enforce the plea on A? I mean, that's almost a double jeopardy problem. So there's intractable problems. The second point I want to make is about the death situation, and that's one that we take very seriously. And, Justice Alito, it may be that in a death penalty situation, there could be a due process right or some other constitutional right that may mitigate in favor of requiring something to be put on the record. But what's clear is that under this Court's existing precedent, that is not a Strickland violation because the amount of the sentence, whether it's death or 50 years, has nothing to do with the reliability of the adjudicatory proceeding and sentence. Finally, the last point that I want to make is something else on which we can all agree. Mr. Cooper is guilty of shooting Kelly Moondy. He also got exactly the sentence that the people prescribed for the crime that he committed. There is very little unfair about holding him to that sentence. As Justice Kennedy said, it's the position of Mr. Cooper that it is unfair to have a fair trial. And from our perspective, that is really the beginning and the end of this inquiry. And unless you have any further questions, I will see you at the table. Kennedy, I have one more property, I think, for the Government of the United States. Under the Federal rules, Rule 11, there has to be a colloquy before a plea is entered. Do you think the Federal rules and perhaps State rules should be amended so that judges, trial judges, before imposing a sentence inquire, have there been plea offers, have they all been communicated to the defendant? Is that good practice? It could be good practice, but it wouldn't have solved the problem here, because even if they had put the fact of the plea on the record, the problem was the alleged deficient advice that the lawyer gave to the client in private. And so that doesn't solve the core problem. The core problem is that they are trying to claim that it was unfair to have a fair trial. Kennedy, if the plea offer had come out, I don't know how it would work when you enter a not guilty plea. Right. The judge, under your theory then, would have had to inquire, well, what advice did your attorney give you with respect to that, and then evaluate whether that advice was good advice or bad advice. And I would respectfully submit that that would not be a good policy to adopt by rule. Thank you, counsel. Thank you. Counsel, the case is submitted.